**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM CRAMER,** | : | Civil No. 3:15-CV-1360 |
| | : | |
| **Plaintiff** | : | |
| | : | (Judge Kosik) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **JOHN KERESTES, et al.** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

**I.**   **Statement of Facts and of the Case**

The plaintiff, a state prisoner, commenced this action by filing a *pro se* complaint on July 13, 2015. (Doc. 1). In his complaint Cramer named five defendants, including four correctional supervisors and employees at the State Correctional Institution, Mahanoy, and one Department of Corrections central office grievance processing official, Dorina Varner. Cramer's complaint then alleged that in November and December of 2014 he was unlawfully placed in a strip cell by the defendants, and certain legal and personal property belonging to the plaintiff was confiscated and destroyed by the defendants. (Id.) Asserting that the destruction of this property violated his rights, Cramer seeks injunctive and declaratory relief, along with compensatory and punitive damages from the defendants. (Id.) While this complaint describes the alleged roles of SCI Mahanoy staff in these events, with respect to the central office defendant named by Cramer, Dorina Varner, the only allegation seems

to be that Varner failed after-the-fact to act favorably upon grievances filed by Cramer relating to this incident. (Id.)

There is a motion to dismiss pending in the case, (Doc. 21), and we are currently awaiting Cramer's response to this motion. (Doc. 34.) In the meanwhile a welter of other motions have been filed. First, on August 26, 2015, Cramer filed what we liberally construe as a motion for a preliminary injunction, (Docs. 14-16), which alleged that additional legal and personal property had been confiscated from his cell six days earlier, on August 20, 2015. (Id.) The defendants have filed a motion to strike this pleading, (Doc. 17), which notes, in part, a technical flaw in Cramer's pleadings in that none of his pleadings are properly captioned as a motion, although the import of Cramer's request is clear from a reading of these documents. The motion to strike also raises substantive objections to this request for a preliminary injunction, observing that Cramer had not fully exhausted his administrative grievances within the prison system prior to seeking this extraordinary injunctive relief. (Id.)

We have, by a separate order, denied this motion to strike. We find, however, that the substantive objections to Cramer's motion for preliminary injunction asserted by the defendants in their motion to strike are well-taken here. Accordingly, for the reasons set forth below, we recommend that this motion for preliminary injunction be denied without prejudice.

**II.    Discussion**

### A. Cramer's Motion for Preliminary Injunction Should Be Denied Without Prejudice

Inmate *pro se* pleadings, like those filed here, which seek extraordinary, or emergency relief, in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure and are judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained: "Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994) (quoting SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985)). See also Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 170-71 (3d Cir. 2001); Emile v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006)(denying inmate preliminary injunction).

A preliminary injunction is not granted as a matter of right. Kerschner v. Mazurkewicz, 670 F.2d 440, 443 (3d Cir. 1982) (affirming denial of prisoner motion for preliminary injunction seeking greater access to legal materials). It is an extraordinary remedy. Given the extraordinary nature of this form of relief, a motion

for preliminary injunction places precise burdens on the moving party. As a threshold matter, "it is a movant's burden to show that the 'preliminary injunction must be the only way of protecting the plaintiff from harm.' " Emile, 2006 WL 2773261, at * 6 (quoting Campbell Soup Co. v. ConAgra, Inc., 977 F .2d 86, 91 (3d Cir.1992)). Thus, when considering such requests, courts are cautioned that:

> "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis deleted). Furthermore, the Court must recognize that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." Plain Dealer Publishing Co. v. Cleveland Typographical Union # 53, 520 F.2d 1220, 1230 (6th Cir.1975), cert. denied, 428 U.S. 909 (1977). As a corollary to the principle that preliminary injunctions should issue only in a clear and plain case, the Court of Appeals for the Third Circuit has observed that "upon an application for a preliminary injunction to doubt is to deny." Madison Square Garden Corp. v. Braddock, 90 F.2d 924, 927 (3d Cir.1937).
>
> Emile, 2006 WL 2773261, at *6.

Accordingly, for an inmate to sustain his burden of proof that he is entitled to a preliminary injunction under Fed.R.Civ.P. 65, he must demonstrate both a reasonable likelihood of success on the merits, and that he will be irreparably harmed if the requested relief is not granted. Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998); Kershner, 670 F.2d at 443. If the movant fails to carry this burden on either of these elements, the motion should be denied since a party seeking such relief must

"demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989)(emphasis in original), (quoting Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)).

These limitations on the power of courts to enter injunctions in a correctional context are further underscored by statute. Specifically, 18 U.S.C. §3626 limits the authority of courts to enjoin the exercise of discretion by prison officials, and provides that:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.
>
> 18 U.S.C.A. § 3626(a)(1)(A).

With respect to preliminary injunctions sought by inmates, courts are also instructed that:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief.

18 U.S.C.A. § 3626(a)(2).

Furthermore, several other basic legal tenets guide our discretion in this particular case, where an inmate: (1) potentially seeks to enjoin a wide array of non-parties; (2) requests injunctive relief of a presumably permanent nature without first fully exhausting administrative remedies; and (3) requests relief which goes beyond merely preserving the *status quo* in this litigation, but seeks to impose new, mandatory conditions on prison officials. Each of these aspects of Cramer's prayer for injunctive relief presents separate problems and concerns.

For example, an injunction against non-parties, requires a specific legal showing. To the extent that Cramer seeks to enjoin non-parties in this litigation it is clear that: "[a] non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought. Fed.R.Civ.P. 65(d)." Elliott v. Kiesewetter, 98 F.3d 47, 56 (3d Cir. 1996).

Further, where the requested preliminary injunction "is directed not merely at preserving the *status quo* but...at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). Mandatory injunctions should be used sparingly. United States v. Price, 688 F.2d 204, 212 (3d Cir. 1982). Thus, a request for some form of mandatory proactive injunctive

relief in the prison context "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518 (3d Cir. 1995).

Moreover, where a prisoner-plaintiff seeks injunctive relief of a presumably permanent or enduring nature, as Cramer does in this case, the plaintiff's failure to timely exhaust his administrative remedies may have substantive significance since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including complaints like those made here grounded in alleged violations of the Eighth Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts.  This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted). Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's

exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court; see, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006), including requests for injunctive relief in a prison context. Ghana v. Holland, 226 F.3d 175 (3d Cir. 2000). Therefore, where an inmate fails to fully and properly exhaust his administrative remedies prior to seeking extraordinary relief in federal court, the court may deny a motion for preliminary injunction. See Torrence v. Thompson, 435 F. App'x 56, 59 (3d Cir. 2011); Booth v. Churner, 206 F.3d 289, 294 (3d Cir. 2000) aff'd, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001).

In addition, to the extent that the plaintiff seeks a preliminary injunction with some enduring effect, he must show that he will be irreparably injured by the denial of

this extraordinary relief. With respect to this benchmark standard for a preliminary injunction, in this context it is clear that:

> Irreparable injury is established by showing that Plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir.1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). Plaintiff bears this burden of showing irreparable injury. Hohe v. Casey, 868 F.2d 69, 72 (3d Cir.), cert. denied, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). In fact, the Plaintiff must show *immediate* irreparable injury, which is more than merely serious or substantial harm. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987). The case law provides some assistance in determining that injury which is irreparable under this standard. "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." Dice v. Clinicorp, Inc., 887 F.Supp. 803, 809 (W.D.Pa.1995). An injunction is not issued "simply to eliminate the possibility of a remote future injury ..." Acierno, 40 F.3d at 655 (citation omitted).

Messner, 2009 WL 1406986, at *4 .

Furthermore, it is well-settled that "[t]he purpose of a preliminary injunction is to preserve the *status quo*, not to decide the issues on their merits." Anderson v. Davila, 125 F.3d 148, 156 (3d Cir. 1997). Therefore, in a case such as this, where the inmate-"Plaintiff's request for immediate relief in his motion for preliminary injunction necessarily seeks resolution of one of the ultimate issues presented in [the] . . . Complaint, . . . [the] Plaintiff cannot demonstrate that [s]he will suffer irreparable harm if he is not granted a preliminary injunction, because the ultimate issue presented will

be decided either by this Court, upon consideration of Defendants' motion to dismiss, or at trial. As a result, Plaintiff's motion for preliminary injunction should be denied." Messner, 2009 WL 1406986, at *5.

In assessing a motion for preliminary injunction, the court must also consider the possible harm to other interested parties if the relief is granted. Kershner, 670 F.2d at 443. Finally, a party who seeks an injunction must show that the issuance of the injunctive relief would not be adverse to the public interest. Emile, 2006 WL 2773261, at * 6 (citing Dominion Video Satellite, Inc. v. Echostar Corp., 269 F.3d 1149, 1154 (10th Cir. 2001)).

Judged against these standards, Cramer's motion for preliminary injunction fails at the present time. First, it is apparent that Cramer cannot have completed his administrative exhaustion as required by law prior to filing this motion. That administrative exhaustion process involves three levels of review at the institution and central office of the Department of Corrections before a grievance is fully exhausted. Under corrections' policies this process takes several weeks to complete and simply cannot be accomplished in the six days which passed between the events alleged in Cramer's motion, which took place on August 20, 2015, and the filing of that motion on August 26, 2015. Therefore, this motion presents what is plainly an unexhausted grievance in a setting where this dispute may well reveal the value of requiring full administrative exhaustion as a prerequisite to filing pleadings in federal court, since the

defendants' filings suggest that while this motion was pending Creamer's property was returned to him.

We further note that there is pending in this case a motion to dismiss. While this motion remains pending, and is not yet ripe for resolution, the motion raises substantial legal challenges to some or all of Cramer's claims, casting doubt upon whether Cramer can "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989)(emphasis in original), (quoting Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)). This is yet another factor which cautions against the issuance of a preliminary injunction.

Finally, the issues raised in this motion for preliminary injunction relating to the alleged unlawfulness of prison property confiscation policies, are inextricably intertwined with the merits of the ultimate issues in this case, which also challenges prison confiscation policies. In this setting we should refrain from speaking on the ultimate issues in this case in a premature fashion.

In short, since the motion for preliminary injunction is plainly unexhausted, rests upon legal claims whose ultimate merits are being actively contested, and may well involve an assessment of the ultimate merits of some of Cramer's legal claims, the

motion should be denied without prejudice to renewal once Cramer has fully exhausted his administrative remedies with respect to these matters.

### III. **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of the motion for preliminary injunction, (Doc. 14), IT IS RECOMMENDED that the motion be DENIED without prejudice.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3d day of November, 2015.

                  *S/Martin C. Carlson*

        Martin C. Carlson
        United States Magistrate Judge